IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 5, 2019

## PHILLIP WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-18-139      Donald H. Allen, Judge**

_____

### No. W2018-02074-CCA-R3-PC
_____

Petitioner, Phillip Williams, appeals from the denial of his petition for post-conviction relief. Because Petitioner failed to establish that he received ineffective assistance of counsel and/or that his guilty plea was unknowing and involuntary, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

William. J. Milam, Jackson, Tennessee, for the appellant, Phillip Williams.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Petitioner pled guilty to one count of second degree murder, three counts of attempted aggravated robbery, and two counts of aggravated kidnapping. At the guilty plea hearing, the State submitted the following as the factual basis for the underlying guilty plea:

> [T]his is an incident from July 17th of 2015 which [Petitioner and codefendant] went to an apartment that was occupied by Mr. James Fisher and Mr. Bob Akins. They went in the apartment. [Codefendant] had a semiautomatic weapon and [Petitioner] had a revolver attempting to rob

Mr. Fisher and Mr. Akins of money and/or marijuana. . . . They then left that apartment taking Mr. Fisher and Mr. Akins with them at gunpoint. . . . [Petitioner] was in possession of a handgun and took Mr. Fisher and Mr. Akins against their will. Basically it was Mr. Akins and Mr. Fisher trying to make up - - getting out of this apartment saying that they knew of some place that - - I believe Mr. Akins was the one who told them he knew some place they could get drugs. They wandered through several streets and some apartment complexes here in Jackson while finally then randomly coming to Mr. Beau Reid's apartment. This was in the middle of the night in an attempt to then rob Mr. Reid is what [Petitioner] and [codefendant] were doing. They still had their guns. Mr. Reid heard commotion outside of his apartment and came out a back door of his apartment and when he came out of the back door of his apartment, he was shot and killed.

Petitioner subsequently filed a pro se petition for post-conviction relief in which he alleged that he received ineffective assistance of counsel during the entry of his guilty plea because defense counsel failed to investigate his case. Additionally, Petitioner alleged that the plea was unknowing and involuntary because the State failed to file a notice of intent to seek enhanced punishment, that he was mentally incapable of entering a plea, and that his conviction was obtained in violation of his constitutional rights. The post-conviction court determined that Petitioner stated a colorable claim for relief and appointed counsel.

At the post-conviction hearing, Petitioner testified that trial counsel filed a motion "for a mental evaluation and a motion to suppress" his statement prior to trial. Petitioner admitted that he had a mental evaluation prior to trial but that he was not made aware of the results of the evaluation. Petitioner admitted that he had a mental evaluation prior to a juvenile transfer hearing during which the trial judge determined the case should be transferred to circuit court.

Petitioner admitted that he gave a statement after being Mirandized. Petitioner confirmed that his mother was present when he gave his statement to police but claimed that he did not want to give the statement and "kept telling [the] investigators [he] didn't want to talk to them, but they unfortunately made [him] talk." Petitioner was shown his statement and admitted that in the statement he explained that he was "robbing someone when they were killed."

Petitioner claimed that trial counsel did not review any materials with him prior to the guilty plea and that he only met with trial counsel "about five times over the two year period of time" for about thirty minutes on each occasion. In fact, Petitioner claimed that trial counsel failed to investigate issues involved in the case prior to the entry of the plea. Specifically, Petitioner wanted trial counsel to get his school records because Petitioner

had been in special education classes his entire school career. Petitioner did not elaborate as to how his school records would assist in his defense.

Petitioner explained that he was supposed to be taking medication at the time of the plea but did not take any of the medication on the morning of his plea. Petitioner said that he was taking Depocon and Celexa to treat his "[b]ipolar, depression, paranoia, and anxiety." He further explained that he was diagnosed with the disorders "[a] minute ago." When asked to estimate, Petitioner explained that he was actually diagnosed "[s]ome years ago" prior to the incident for which he entered the guilty plea. Petitioner did not provide any documentation of his mental disorders or offer any further proof that he was prescribed medication. At the time of the hearing, Petitioner claimed that he was prescribed medication but that he had not been taking it for about six days because the jail staff "didn't give it to [him]" while he was in the Madison County jail awaiting the hearing.

Petitioner testified that the only plea offer he received from trial counsel prior to the guilty plea was for thirty years. According to Petitioner, trial counsel told him to "plea to the 30 because that was the best offer because if [he] went to trial [he would] get life." Petitioner insisted that he did not "officially" understand everything on the day of the plea hearing. At first, Petitioner denied understanding the plea. Later, during cross-examination, he recalled agreeing to plead guilty as a Range II offender even though he had no prior convictions on his record. Petitioner claimed that trial counsel did not explain the ramifications of pleading guilty as a Range II offender but later testified that he knew what it meant. Petitioner admitted that he understood the basic process of pleading guilty and that a mental evaluation confirmed that he was competent to stand trial. Petitioner also admitted that he understood what the trial court told him at the plea hearing with regard to his exposure to potential sentences. In fact, Petitioner confirmed that he understood his constitutional rights, the evidence against him at trial, who his lawyer was, who the judge was, what the sentence was, and that he was pleading outside the range. However, Petitioner claimed that he "didn't understand [he] was getting charged as a f***ing Range 2 offender."

Trial counsel testified that he had been licensed for eighteen years and that his practice primarily consisted of "[c]riminal defense, civil litigation, [and] estate planning." Trial counsel recalled being appointed to represent Petitioner in juvenile court prior to the case's transfer to circuit court.

Trial counsel was aware that Petitioner suffered from mental health issues but recalled that Petitioner was evaluated in juvenile court and determined competent. Petitioner was "actually evaluated twice in circuit court initially by Pathways and following that evaluation they referred him to Middle Tennessee Mental Health Institute

where he remained and underwent a 30 or 45 day evaluation." Those evaluations also determined Petitioner was competent.

Trial counsel remembered that the only plea offer extended by the State was the offer of "30 years." According to trial counsel, the State "felt [Petitioner] was not the leader in the commission of the offense, but obviously bore responsibility." In trial counsel's opinion, there was a "narrow defense" available to Petitioner at trial because criminal responsibility was "going to be difficult to overcome." Trial counsel stated that "based on [Petitioner's] statement alone it was going to be a tough case to defend." The first offer extended by the State was contingent on Petitioner's testifying at the trial of the codefendant. Trial counsel recalled that Petitioner "declined that offer." After the codefendant was convicted, the State renewed the offer without the contingency that Petitioner testify. Trial counsel told Petitioner it "was in his best interest to accept the 30 year plea based on the facts of the case and based on his statement [and] the ballistics." Trial counsel felt that there was a "strong likelihood he would be convicted as charged" if Petitioner went to trial, especially in light of the fact that Petitioner's codefendant was convicted of felony murder after a trial. Trial counsel recalled that the codefendant did not give a statement, so he felt that the State's proof was actually stronger in Petitioner's case. Trial counsel advised Petitioner "early on" to "cooperate and testify against the codefendant and take the 30 year offer."

Trial counsel stated that he filed a motion for discovery and reviewed Petitioner's statement both on his own and with Petitioner prior to the entry of the guilty plea. Trial counsel did not recall the State filing a notice of enhanced punishment but did recall discussing the parameters of the plea agreement with Petitioner, specifically explaining that "he was pleading outside his range."

Trial counsel testified that he was not aware or did not recall if he was aware Petitioner was taking medication at the time of the guilty plea. In fact, trial counsel recalled that Petitioner "seemed perfectly able to comprehend what was going on." Petitioner did not give any indication to trial counsel that he did not understand the process or the plea.

After taking the matter under advisement, the post-conviction court denied relief, finding that Petitioner failed to bear his burden of proving his allegations in the petition by clear and convincing evidence. Specifically, the post-conviction court accredited the testimony of trial counsel and did not credit Petitioner's testimony that he failed to "fully understand" the ramifications of his guilty plea. As a result, the post-conviction court denied relief. Petitioner filed a timely notice of appeal.

*Analysis*

- 4 -

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Both the Sixth Amendment to the Constitution of the United States and Article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Burns*, 6 S.W.3d at 462; *see also Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994);

*Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In order to determine prejudice, the question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* (quoting *Strickland*, 466 U.S. at 691). To establish prejudice in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

To satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). This Court may consider the following circumstantial factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993). "[A] plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). A defendant's solemn declaration in open court that his plea is knowing and voluntary creates "a formidable barrier in any subsequent collateral proceeding" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

It is difficult to separate Petitioner's claim of ineffective assistance of counsel from his claim that his guilty plea was unknowingly and involuntarily entered. Therefore, we will address them together. On appeal, Petitioner argues that "both prongs in *Strickland* have been met and he has proven by clear and convincing evidence that [trial counsel] was ineffective." Specifically, Petitioner alleges that he did not understand everything when he entered the guilty plea because he was not taking the medication that he was supposed to take and that trial counsel was aware that he was not taking his medication.[1] Petitioner abandons his claim with regard to the State's failure to file a notice of intent to seek enhancement punishment on appeal.

As to ineffective assistance of counsel, the post-conviction court found trial counsel's testimony credible and determined that Petitioner was fully advised about the consequences of the guilty plea and that Petitioner failed to show either deficient performance or prejudice with respect to the actions of trial counsel. The post-conviction court also determined that trial counsel gave advice and services "within the bounds of generally accepted professional standards." The record does not preponderate against the findings of the post-conviction court. Thus, we agree with the post-conviction court's conclusion that Petitioner failed to prove that he received ineffective assistance of counsel.

With regard to the guilty plea, the post-conviction court accredited the testimony of trial counsel, who testified that he was unaware that Petitioner was even taking medication and that he had no idea Petitioner was off his medication on the day of the entry of the plea. Petitioner did not offer any testimony at the hearing to show how his ability to enter into the plea agreement was affected by failing to take his medication or any testimony other than his own that he was either prescribed and/or was not taking medication at the time of the plea.

At first, Petitioner testified that he did not understand the plea or that he was pleading outside the range, but later in the hearing, Petitioner admitted that he understood that he was pleading to second degree murder as a Range II offender and that he understood the plea. The post-conviction court determined that Petitioner knew and understood the nature and consequences of the guilty plea and specifically found Petitioner's claim that he did not fully understand his guilty plea to be untruthful. The post-conviction court noted that Petitioner indicated "under oath <u>two</u> times that he was guilty of [s]econd [d]egree [m]urder of the victim, and also guilty of three counts of [a]ttempted [a]ggrataved [r]obbery, and also guilty of two counts of [a]ggravated

---

[1] We are flummoxed by Petitioner's assertion. Petitioner's argument that trial counsel had knowledge that Petitioner was on medication at the time of the entry of the guilty plea contradicts with our review of the transcript of the post-conviction hearing where trial counsel clearly testified that he was not aware that Petitioner was taking any medication.

[k]idnapping." We defer to the credibility determinations of the post-conviction court. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Moreover, the plea hearing transcript reflects a detailed and thoughtful inquiry by the trial court with regard to Petitioner's understanding of the plea agreement prior to the entry of the plea. The record does not preponderate against these findings. We agree with the post-conviction court's conclusion that Petitioner failed to prove that his guilty plea was not knowingly and voluntarily entered.

Petitioner also makes a claim that the cumulative effects of trial counsel's errors somehow entitle him to relief. Without a showing of either prejudice or ineffective assistance, Petitioner is not entitled to relief on the basis of cumulative error. *See Thomas Edward Clardy v. State*, No. M2017-01193-CCA-R3-PC, 2018 WL 5046032, at *7 (Tenn. Crim. App. Oct. 17, 2018), *perm. app. denied* (Tenn. Apr. 12, 2019).

*Conclusion*

Based upon our review of the record, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE